UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**JOHN RAY BROWN,**

                **Petitioner,**

             **v.**                                            **Case No. 10-C-112**

**WILLIAM POLLARD,**

                **Respondent.**

## DECISION AND ORDER DENYING PETITION
## FOR A WRIT OF HABEAS CORPUS

**I. PROCEDURAL HISTORY**

On February 9, 2010, John Ray Brown ("Brown"), a person incarcerated pursuant to a state court judgment, proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court screened the petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and ordered the respondent to answer the petition. (Docket No. 13.) The respondent answered the petition on July 13, 2010. (Docket No. 31.) On July 19, 2010, Brown replied. (Docket No. 33.) Brown has also submitted various letters and exhibits in support of his petition. (Docket Nos. 24, 26, 27, 34, 35, 37, 38, 40. 41. 42.) On August 3, 2010, the court ordered the respondent to supplement his answer with certain exhibits omitted from his prior response. (Docket No. 36.) These additional exhibits were received on August 31, 2010. (Docket No. 39.) The pleadings on the petition are closed and the matter is ready for resolution. All parties have previously consented to the full jurisdiction of a magistrate judge. (Docket Nos. 6, 17.)

## II. FACTS

Following a jury trial, on March 8, 2005, Brown was convicted of one count of armed robbery. (Ans. Ex. A.) He was sentenced to a term of initial confinement of 20 years to be followed by 5 years of extended supervision. (Ans. Ex. A.) Brown appealed, and on September 30, 2008, the court of appeals affirmed his conviction. (Ans. Ex. F.) The Wisconsin Supreme Court denied review on February 10, 2009. (Ans. Ex. H.) A subsequently filed petition for a writ of habeas corpus was denied by the court of appeals on October 14, 2009. (Ans. Ex. I.) The record before this court contains no indication that Brown sought review of the court of appeals' decision by the Wisconsin Supreme Court.

The following relevant facts are contained in the court of appeals' unpublished decision:

> [The victim], then eighty-six years of age, told police that on November 12, 2004, a man came to the door of her Wauwatosa home at about 10:15 a.m. and asked her about a person named "Rose." When [the victim] told the man she knew of no such person, the man left. According to [the victim], about ten or fifteen minutes later, the same man came back to her door as [the victim] was talking on the phone. [The victim] put the phone down and went to the door. The man, later identified by [the victim] as Brown, opened the storm door and pushed in the inner door and grabbed [the victim]'s arm. At the time, the robber was wearing gloves. She yelled to her friend on the other end of the phone to call 911. Brown pulled her through the dining room and covered her neck and mouth with his arm. Next, he took her to the rear bedroom doorway, where he told her he wanted money. While in the doorway, [the victim] looked down and saw a knife in Brown's hand. Brown then took her into the kitchen. When they got to the kitchen, Brown spotted [the victim]'s purse containing her wallet, money, checkbook, and credit cards. He grabbed the purse and ran out of the house. [The victim] called the police.
>
> [The victim] later testified that she saw Brown again that day when a detective drove her to North 60th Street (several blocks away from [the victim]'s home) where she identified Brown as the robber as he was standing at the curb. She stated that he looked the same, except he was not wearing a jacket. When shown a jacket, recovered from the area where the robber fled, [the victim] testified it was the same color as the one Brown was wearing during the armed robbery, but she did not recall there being writing on it. She also told the jury that the knife recovered along the route taken by the robber looked the same as the knife used in the robbery. As to the gloves, [the victim] said they could have been the gloves worn by the robber, but she was unsure.

A Wauwatosa police officer testified at trial that at approximately 10:25 a.m. his dispatcher advised him that there had been a robbery in the 2300 block of North 66th Street. The officer said that, as a result, he drove his squad car to 61st Street and North Avenue where, approximately three minutes later, he spotted a man, later identified as Brown, who matched the description given by the dispatcher. The description given of the robber was a "black male with a light blue jacket and blue jeans." When the officer pulled his squad over and told Brown he needed to talk with him, Brown ran away. The officer followed in his squad car until Brown ran through several yards, at which time the officer gave chase. After losing sight of Brown, the officer kept watch and waited until other officers radioed him that they had a subject in custody who was hiding behind a garage. The man they discovered matched the description of the person the original officer had been chasing. When the officer next saw Brown, he was not wearing the jacket the officer had seen him wearing earlier. The police then retraced the areas where Brown tried to elude the police and recovered [the victim]'s purse, a pair of gloves, a blue jacket, and a knife.

Also testifying at the trial was a Wauwatosa detective who recounted that he went to [the victim]'s residence shortly after the robbery was reported, and observed that at first [the victim] had trouble catching her breath, and he was concerned about her health. He stated that after awhile [the victim] recovered, and about an hour after he arrived, he drove her to North 60th Street, where a suspect was being detained in a police car. He described what he did when he reached the area where the suspect was being held. He stated: "I pulled my car up on the opposite side of the street facing south so that we wouldn't be too close." He testified that he gave the following instructions to [the victim]:

> [Detective:] I told her that we were going to go see a person who had been stopped by the police that we thought might be the person who robbed her, and that we would have this man get out of the car and that she would have to – if she recognized him, she would have to tell me whether it was the person or not, and I encouraged her to tell if she didn't recognize him. I didn't want her to identify this man simply because he was getting out of a police car and simply because the police had stopped him.
>
> [Prosecutor:] Did she have any questions of you about this procedure?
>
> [Detective:] Not really. She seemed to understand it. She was – she was very concerned that this person didn't see her. That's what I most distinctly recall. She wanted to be able to hide or hunch down in the back seat so that this man couldn't see her if it was, in fact, the robber.

The detective said that after viewing the man, [the victim] said: "That's the man."

(Ans. Ex. F at ¶¶2-5.)

In his petition, Brown presents four related grounds for relief. Three of these grounds directly relate to a claim of ineffective assistance of counsel. Brown contends that his attorney was

3

ineffective for failing to challenge the identification of Brown and to properly investigate Brown's case. (Docket No. 1, Grounds 1, 2, 4.) As for his final ground for relief, Brown claims he is entitled to relief because of certain inconsistencies in the reports of the investigating officers with respect to details regarding the identification procedure. (Docket No. 1, Ground 3.)

**III. STANDARD OF REVIEW**

> Under the Antiterrorism and Effective Death Penalty Act (AEDPA), [a federal court] may grant a petition for habeas relief from a state court judgment only in one of two limited circumstances: if the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Smith v. Grams, 565 F.3d 1037, 1043 (7th Cir. 2009).

The court shall presume that the state court's factual determinations are correct, and the petitioner may rebut this presumption only be clear and convincing evidence. Id. (citing § 2254(e)(1)). The petitioner "bears the burden of showing that the state court's finding of fact or its application of federal law was not only erroneous, but unreasonable." Id. (citing Waddington v. Sarausad, 129 S. Ct. 823, 831 (2009); Sturgeon v. Chandler, 552 F.3d 604, 609 (7th Cir. 2009)). Under the "unreasonable application" prong of (d)(1), it is not enough for the federal court to simply disagree with the conclusion of the state court; the state court's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

**IV. INEFFECTIVE ASSISTANCE OF COUNSEL**

A petitioner seeking relief pursuant to 28 U.S.C. § 2254 due to an alleged denial of the effective assistance of counsel must demonstrate that the state court's decision on this issue was contrary to or involved an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). Wright v. Van Patten, 552 U.S. 120, 122(2008) (per curiam). Under Strickland, a petitioner

is entitled to relief only if he can prove the following two elements. Goodman v. Bertrand, 467 F.3d 1022, 1027 (7th Cir. 2006). First, the petitioner must prove that his counsel's performance was unreasonable. In assessing the reasonableness of counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Raygoza v. Hulick, 474 F.3d 958, 962 (7th Cir. 2007) (quoting Strickland, 466 U.S. at 689). A court assessing the reasonableness of an attorney's performance must be cautious not to view counsel with the distorted perspective offered by hindsight; rather, every effort must be made to evaluate an attorney's performance from the perspective of counsel at the time. Strickland, 466 U.S. at 689. An attorney's actions do not become unreasonable simply because they proved unsuccessful. Id.

Second, the petitioner must prove that this unreasonable conduct prejudiced his defense. It is not enough for petitioner to show that the attorney's error had "some conceivable effect on the outcome." Raygoza, 474 F.3d at 962-63 (quoting Strickland, 466 U.S. at 693). But on the opposite side, it is not necessary for the petitioner to demonstrate that the error more likely than not altered the outcome of the case. Id. Rather, the petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694).

## V. ANALYSIS

### A. Ground One

The primary focus of Brown's petition is the claim that his trial counsel was ineffective for not moving to suppress the victim's identification of Brown at a showup shortly after his arrest. (Docket No. 2 at 11.) The court of appeals noted that at the time of Brown's trial, the law relating to showup identifications in Wisconsin was set forth in State v. Wolverton, 193 Wis. 2d 234, 533

N.W.2d 167 (1995). (Ans. Ex. F at ¶12.) The court of appeals concluded that counsel's failure to file a motion to suppress the identification was not unreasonable or prejudicial because, under the standard articulated in Wolverton, such a motion would have been denied. (Ans. Ex. F. at ¶12.) The court of appeals stated:

> The holding in Wolverton was that "show-up" identifications were admissible unless they were "impermissibly suggestive" and, under the totality of the circumstances, the identifications were unreliable. Id., 193 Wis. 2d at 264. Here, no evidence was presented that the "show-up" identification by [the victim] was "impermissibly suggestive." [The victim] had ample opportunity to observe Brown, both the first time he came to her door, and the second time, when he barged into her home, dragged her through several rooms, and robbed her at knifepoint; and [the victim] was able to give the police a detailed description of her assailant. Further, the detective who accompanied [the victim] to the location where Brown was being detained testified that he did not tell [the victim] that they had caught the robber. Rather, he testified that he told her a suspect had been apprehended. Moreover, there is nothing in the record that suggests that the identification was unreliable. [The victim] saw Brown in person and, after looking at him, now jacketless, standing on the curb, exclaimed: "That's the man." Clearly, under the Wolverton standard, had a motion to suppress been filed, it would have been denied.

(Ans. Ex. F at ¶12.)

However, about 4 months after Brown was convicted, the Wisconsin Supreme Court greatly altered the law of showup identifications in Wisconsin. See State v. Dubose, 2005 WI 126, 285 Wis. 2d 143, 699 N.W.2d 582. Relying upon the Wisconsin constitution, the Wisconsin Supreme Court held that under most circumstances, if the police have probable cause to arrest, a showup identification is unconstitutional. Id. at ¶45. Because Brown's trial counsel had not preserved this issue for appeal by filing a motion challenging the identification, Brown was not able to obtain the benefit of this shift in the law despite the fact that Dubose was decided before Brown's conviction was final. (Ans. Ex. F. at ¶8.) The court of appeals concluded that trial counsel was not ineffective for failing to preserve the issue for appeal, noting that an attorney has no obligation to "argue a point of law that is unsettled." (Ans. Ex. F at ¶14 (quoting State v. McMahon, 186 Wis. 2d 68, 84, 519 N.W.2d 621 (Ct. App. 1994))).

As a preliminary matter, it is important to emphasize the nature of Brown's constitutional challenge. Brown's ground for relief as it was presented to the court of appeals did not include a claim under the 14th Amendment that his right to due process was violated by an impermissibly suggestive identification procedure. Rather, Brown's claim for relief is based an allegation that he was denied his 6th Amendment right to the effective assistance of counsel and it is only through the vehicle of the Sixth Amendment that the court may reach issues relating to Brown's identification. This distinction is significant because if Brown was alleging a due process violation, federal law regarding showups would be controlling. However, because the question is whether Brown's attorney's performance was unreasonable and prejudicial, this court must be guided by Wisconsin case law on showup identifications, which Dubose demonstrates may be more beneficial to a defendant, rather than federal constitutional minimums that the court would consider if Brown was directly alleging a violation of due process.

Moreover, Brown is not alleging that his trial counsel was ineffective for failing to anticipate the change in the law regarding showup identifications and to preserve the issue for later appeal. The law regarding a defendant's Sixth Amendment right to counsel is clear that an attorney is not ineffective because he failed to anticipate a change in the law. Lilly v. Gilmore, 988 F.2d 783, 786 (7th Cir. 1993).

Thus, the question underlying both prongs of the ineffective assistance analysis is if a motion to suppress the identification had been filed, would it have been granted under the law in effect at the time of Brown's trial? In response to Brown's motion for post-conviction relief wherein he alleged that his trial counsel was ineffective, rather than holding a traditional ineffective assistance of counsel hearing pursuant to State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (1979), the court, in effect, held an evidentiary hearing as if a motion to suppress the showup identification was pending. (Ans. Ex. P, Docket No. 39-1.)

Wolverton concisely sets forth the law regarding showup identifications that existed in Wisconsin at the time of Brown's trial.

> A criminal defendant is denied due process when identification evidence admitted at trial stems from a pretrial police procedure that is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). Showups, however, are not per se impermissibly suggestive. State v. Streich, 87 Wis. 2d 209, 214, 274 N.W.2d 635 (1979); State v. Isham, 70 Wis. 2d 718, 725, 235 N.W.2d 506 (1975). Rather, a criminal defendant bears the initial burden of demonstrating that a showup was impermissibly suggestive. State v. Mosley, 102 Wis. 2d 636, 652, 307 N.W.2d 200 (1981); Powell v. State, 86 Wis. 2d 51, 65, 271 N.W.2d 610 (1978). If this burden is met, the burden shifts to the state to demonstrate that "under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Manson v. Brathwaite, 432 U.S. 98, 106 (1977) (citing Neil v. Biggers, 409 U.S. 188, 199 (1972); Mosley, 102 Wis. 2d at 652; Powell, 86 Wis. 2d at 65-66. In determining whether an identification was reliable despite the suggestive nature of the police procedure, the following factors are relevant:
>
>> [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of his prior description of the criminal, [4] the level of certainty demonstrated at the confrontation, and [5] the time between the crime and the confrontation.
>
> Manson, 432 U.S. at 114 (citing Biggers, 409 U.S. at 199-200); Powell, 86 Wis. 2d at 65 (citing Biggers, 409 U.S. at 199-200; Manson, 432 U.S. at 114).

Wolverton, 193 Wis. 2d at 264-65, 533 N.W.2d at 178.

Brown has failed to demonstrate that the showup identification was so impermissibly suggestive that there was a very substantial likelihood of irreparable misidentification. Even if Brown was able to meet this burden, the state has adequately demonstrated that under the totality of the circumstances the identification was nonetheless reliable.

The detective who accompanied the elderly victim and coordinated the showup identification of the suspect testified that shortly after the robbery the victim was pale, shaky, perhaps having difficulty breathing, and maybe in need of medical attention. (Docket No. 39-1 at 12.) But quickly she regained her composure, thus abating the detective's concern for her health. (Docket No. 39-1 at 12-13.) Nonetheless, the victim remained fearful of being seen by Brown

during the identification procedure. (Docket No. 39-1 at 23.) Although the detective testified at the post-conviction hearing that he did not recall what specifically he might have said to caution the victim not to conclude that this was the robber simply because he was in custody, the detective testified that such cautionary statements were part of his routine. (Docket No. 39-1 at 24.) The detective testified that the victim was sure that the person she was viewing was the person who had robbed her. (Docket No. 39-1 at 27.)

The victim had ample opportunity to view the robber. Initially, she saw him in a non-stressful situation when he came to her door and "very polite[ly]" asked for an individual who did not live there. (Docket No. 39-1 at 28; 39-3 at 7.) About 10 minutes later, she saw the robber through her front window as he again approached her door. (Docket No. 39-1 at 28; 39-3 at 7.) When the victim answered the door again, it was then that the robber burst into the house and committed the robbery. (Docket No. 39-1 at 28.) In the course of the robbery, the robber dragged the victim through the house, placing his hand over her mouth to stop her from screaming, and after asking if the victim was alone, demanded money. (Docket No. 39-3 at 5-6.) The robbery lasted about five minutes. (Docket No. 39-3 at 9.)

The transcription of the victim's 911 call further demonstrates that the victim had ample opportunity to view the robber. (Docket No. 26 at 11-14.) The victim was able to tell the dispatcher that the robber was wearing a brand new light blue down jacket with "a couple of emblems on it." (Docket No. 26 at 13.) The victim described the robber as "real black," in his late-20s or early-30s, with a mustache and short black hair. (Docket No. 26 at 13-14.)

Although at the preliminary hearing the victim readily identified Brown as the person who robbed her, (Docket No. 39-3 at 4), at trial, the victim initially did not see the person who robbed her in court but shortly thereafter pointed out Brown as the person who robbed her. (Ans. Ex. L at 68-69.) Also at trial, the victim testified that she observed the robber's face during the robbery, but

9

when asked about whether she was able to view Brown's face during the showup identification, the victim testified, "I couldn't see that clear, but his height and everything looked the same," except for his jacket which Brown had removed. (Ans. Ex. L at 72-73.) When presented with a photograph of the jacket recovered from the area where Brown fled, the victim testified at trial that although the jacket in the photograph was the same color as the jacket the robber was wearing, the jacket in the photo was not the same jacket the robber was wearing. (Ans. Ex. L at 74-75.) The victim recalled that the jacket had "some circles and squares on the back and on the left sleeve" rather than numbers. (Ans. Ex. L at 75.) The victim similarly was not sure if the gloves recovered from along the route Brown fled were the same gloves the robber wore or if the knife recovered was the same one the robber used. (Ans. Ex. L at 76-77; 85.)

But any inconsistency or deficiency in the victim's trial testimony is largely irrelevant to the question of whether it was unreasonable or prejudicial for trial counsel to not file a motion to suppress the showup identification. The victim's lack of certainty regarding whether certain evidence recovered was worn or used by the robber presented questions for the jury to consider in assessing the defendant's guilt. Because this information did not come out until trial, it is not appropriate to consider this information in determining whether counsel performed reasonably during the pretrial stage. <u>Strickland</u> explicitly cautioned courts not to be led astray by "the distorting effects of hindsight" when considering the strategic choices made by counsel. <u>Strickland</u>, 466 U.S. at 689. Specifically, courts "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Id.</u> at 690. Thus, in assessing the reasonableness of counsel's decision to forego a pretrial motion to suppress, the court must consider what counsel knew before trial. As detailed above, the recording of the victim's 911 call and the victim's preliminary hearing testimony all demonstrate that under the totality of the circumstances the identification was nonetheless reliable. Thus, because the information that

counsel possessed at the time indicated that a motion to suppress would have been unsuccessful under controlling law at that time, the court is unable to conclude that trial counsel was unreasonable by foregoing such a motion.

Moreover, as the post-conviction proceedings in the circuit court make clear, had Brown's attorney filed a motion to suppress, it would have been denied. The circuit court, in effect, held a suppression hearing and determined that under Wolverton, the identification was not subject to suppression. This conclusion of the circuit court was affirmed on appeal, and this court is unable to say that this determination was unreasonable in light of the evidence presented in the state court proceeding. As explained above, even if Brown could demonstrate that the showup was impermissibly suggestive, there is ample evidence demonstrating that under the totality of the circumstances the victim's identification was reliable.

Accordingly, for these reasons, this court is unable to conclude that the court of appeals' conclusion that Brown was not denied the effective assistance of counsel was contrary to or involved an unreasonable application of Strickland. Therefore, the court must deny Brown's petition as to this ground.

**B. Grounds Two, Three, and Four**

As for the other grounds raised in Brown's petition, the court regards Brown's second and third grounds for relief as largely repetitious or merely supportive of the first ground addressed above. To the extent that these grounds present any claim distinct from that encompassed in his first claim addressed above, Brown is barred from obtaining relief for these claims because he has failed to exhaust his state court remedies with respect to any of these claims. In determining whether a petitioner has exhausted his state court remedies with respect to a certain claim, the court looks to the briefs he submitted to the appellate court. Malone v. Walls, 538 F.3d 744, 753 (7th Cir. 2008). Brown's appellate briefs, (Ans. Exs. C, E), and petition for review, (Ans. Ex. G), all discuss only a

claim that Brown's trial counsel was ineffective for failing to move to suppress the showup identification. Likewise, Brown has failed to exhaust his state court remedies with respect to his fourth claim for relief that his trial counsel was ineffective for failing to investigate his case, (Docket No. 1 at 9).

Although the respondent alleged in his answer that Brown failed to exhaust his state court remedies, (Docket No. 31 at 6-7), Brown has not offered any substantive reply to this contention. A federal court cannot grant a petition for a writ of habeas corpus under 28 U.S.C. § 2254 unless the "applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). When a petition contains claims for which the petitioner has exhausted his state court remedies as well as those for which he has not exhausted his state court remedies, the petition is "mixed" and must generally be dismissed in its entirety. Rhines v. Weber, 544 U.S. 269, 273 (2005) (citing Rose v. Lundy, 455 U.S. 509 (1982)). However, with AEDPA's one-year statute of limitations for filing a § 2254 petition for a writ of habeas corpus, see 28 U.S.C. § 2244(d)(1), and the prohibition on state inmates filing more than one petition for a writ of habeas corpus, see 28 U.S.C. § 2244(a)-(b), dismissing the present petition in its entirety because it is a mixed petition would likely bar the petitioner from ever presenting his claims to a federal court.

The only likely way a federal court would be able to consider the petitioner's unexhausted claims is if this court were to stay the proceedings in this matter and hold his petition in abeyance while the petitioner returned to state court to exhaust his remedies with respect to these claims. But staying proceedings and holding a petition in abeyance while the petitioner exhausts his state court remedies is an extraordinary step that is limited to instances where not only is there potential merit to the petitioner's unexhausted claims but also that the petitioner has demonstrated that there was good cause for his failure to exhaust his state court remedies. Rhines, 544 U.S. at 277.

As for the first step, the petitioner has failed to demonstrate that his claims are potentially meritorious. His second ground is essentially a restatement of his first ground, and thus fails for the reasons set forth above. As for his second ground, to the extent that this separate ground for relief intends to present a distinct claim for relief rather than merely additional factual support for his ineffective assistance of counsel claim, the existence of inconsistencies regarding the time that elapsed before the showup does not present a cognizable claim for federal habeas corpus relief. Finally, Brown's fourth ground is undeveloped in that he offers nothing more than stating in a conclusory fashion, "Ineffective Assistance of Counsel failed to Investigation my Case." (Docket No. 1 at 9.)

The petitioner has also failed to demonstrate good cause for his failure to exhaust his state court remedies with respect to his second, third, and fourth claims for relief. Therefore, this court is precluded from staying the proceedings and holding the petition in abeyance as he exhausts his state court remedies.

Although a mixed petition must generally be dismissed in its entirety, so as to avoid denying Brown a decision on the merits of the single claim for which Brown has exhausted his state court remedies, in light of the court's conclusion that Brown's second, third, and fourth grounds for relief are meritless, the court chooses to exercise its authority under 28 U.S.C. § 2254(b)(2) and hereby denies Brown's petition on its merits as to these grounds.

**VI. CONCLUSION**

Brown has failed to demonstrate that the court of appeals' conclusion that his trial counsel was not ineffective for failing to file a motion to suppress the victim's identification of Brown because such a motion would not have been granted under law in effect at the time was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding. Therefore, the court must deny Brown's petition as to this ground. Further, Brown has failed to exhaust his state court remedies with respect to all other claims raised in his petition and has failed to present any reason for his failure to do so. The court finds that staying the proceedings and holding his petition in abeyance is inappropriate because these unexhausted claims are meritless. Accordingly, these unexhausted claims are denied pursuant to 28 U.S.C. § 2254(b)(2).

Finally, the court finds that the petitioner has failed to make a substantial showing of a denial of constitutional right, see 28 U.S.C. § 2253(c)(2), and thus, in accordance with Rule 11 of the Rules Governing Section 2254 Cases, the court denies the petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **denied** and in accordance with Rule 11 of the Rules Governing Section 2254 Cases the court **denies** the petitioner a certificate of appealability. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 1st day of October 2010.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge